WIEGEL *v.* ROAD IMPROVEMENT DISTRICT No. 1 OF PRAIRIE COUNTY.

Opinion delivered March 1, 1920.

1. APPEAL AND ERROR—FORMER DECISION AS LAW OF CASE.—The construction of the contract sued on upon former appeal is the law of the case.

2. SALES—FIRST BREACH OF CONTRACT.—Under the rule that he who commits the first breach of a contract can not maintain an action against the other for a subsequent failure to perform, where the seller of trap rock failed in its duty to furnish the various sizes of rock in the proportions ordered, he can not sue the buyer for failure to make payments at designated times.

Appeal from Prairie Circuit Court, Southern District; *Geo. W. Clark,* Judge; affirmed.

*Edward B. Downie, Price Shofner* and *Mehaffy, Donham & Mehaffy,* for appellants.

It was the duty of the buyer to furnish the cars. 45 N. E. 126; 27 Atl. 836; 123 Fed. 655; 133 *Id.* 409; 40 L. R. A. 534. See also 6 L. R. A. (N. S.) 928 and cases cited. But if not appellee at no time claimed failure to get cars as a violation or breach of the contract, but the claim was that Wiegel failed to furnish the rock as required by the contract. Where a contract is for mutual acts, the refusal of one to perform justifies the other in treating the contract as rescinded. 38 Ark. 174; 22 *Id.* 258. See also 79 *Id.* 271; 194 S. W. 508; 67 *Id.* 156. Practically all the authorities sustain appellants' contention that there was a breach of contract by the district. 56 Ark. 320; 64 *Id.* 228; 88 *Id.* 491, 422; 98 *Id.* 472; 105 *Id.* 171; 98 *Id.* 160; 43 *Id.* 193; 79 *Id.* 582; 93 *Id.* 453; 9 Cyc. 641, 643; 61 L. R. A. 407; 1 Sutherland on Dam. (4 Ed.), § 66; 178 Pac. 906. No view of the evidence and contract can be taken which justified damages against Wiegel, but the evidence is conclusive that appellee violated the contract and Wiegel was justified in declining to furnish more rock.

*Emerson, Donham & Shepherd* and *Charles B. Thweatt,* for appellee.

The evidence sustains the finding that the district ordered the rock delivered—five cars a day. The contract is plain as to the authority of the district to order the rock, and Wiegel did not comply with his contract. Shortage of cars was no defense. 149 U. S. 1; 35 Cyc. 245; 36 Pa. Sup. Ct. 475. See also 93 Ark. 446; 104 Pac.

1115; 176 Ill. App. 178; 141 *Id.* 603; 134 Fed. 294; 23 R. C. L., p. 1430, § 254. Wiegel agreed to fill all orders for rock, and hence it was his duty to procure cars. 73 Kan. 422; 6 L. R. A. (N. S.) 928. The decision on the former **appeal** settles the law of this case. 126 Ark. 31.

SMITH, J. This is the second appeal in this cause, the opinion on the former appeal being found in 126 Ark. 31.

The law of the case was declared on this former appeal, where the contract out of which this litigation arises was set out, so it remains only to determine whether the law as there declared was properly applied at the trial from which this appeal comes, and we restate here only such facts as must be recited in the decision of that question.

We said, in construing the contract under which the parties operated, that the district was not required to take the entire output of the plant, but that the engineer of the district had the right to order the rock in such proportions as the district needed. We, therefore, held against Wiegel's contention that he had only agreed to furnish the output of his plant, and that it was not the duty of the district to take the entire output, but that the district had the right to order rock in such proportions as it pleased.

Notwithstanding this construction of the contract, it is contended that Wiegel was performing the contract when the district breached it by refusing to furnish cars to haul the rock, or to pay for the rock already delivered.

The parties agree that the law is that he who commits the first breach of a contract cannot maintain an action against the other for a subsequent failure to perform, and that the decisive question in the case is, who committed the first breach?

The briefs contain an interesting discussion of the duty to furnish cars to haul the rock as between the parties. But we find it unnecessary to decide that question of law to dispose of the question of fact involved.

To begin with, it is undisputed that Wiegel's contract only permitted him to charge the district 62 cents per yard for the rock, whether it was No. 1, 2, 3 or 4, whereas, because of the advance in the price, No. 1 rock was then worth $1 per yard and No. 3 rock $1.35 per yard, and could not be obtained at a less price. It is, therefore, apparent that it was greatly to the district's advantage to have the contract performed, and the repeated and insistent letters written to Wiegel, calling on him to ship the rock, and assuring him that money to pay for it was lying idle in the bank, leaves no doubt that the district desired its execution.

An order for five cars a day was placed, it being explained to Wiegel that a larger quantity could not be distributed over the road to be improved, and if more was shipped demurrage would have to be paid on unloaded cars, but that the contractor had the necessary teams to distribute that quantity of rock, and if it were not furnished, the district would be required to pay for the services of unemployed teams with their drivers.

A general order to ship the rock in the proportion of two cars of No. 1 to one car of No. 3 was given; yet it appears that only on five days were shipments made in the quantity ordered, and an even less effort was made to ship it in the proportions ordered.

The contractor and the engineer testified that the original plan for the construction of the road, which was made and approved before the contract with Wiegel was entered into, and which was never afterward changed, was to build the first course four inches thick with No. 1 rock, and the second course two inches thick with No. 3 rock, and that it was better for the road for not more than a thousand feet to a quarter of a mile of the first course to be put down before the second course was put on top of it. That the hauling and traffic over the No. 1 course cuts up and jars the large rock loose and the course will not be compact and smooth to receive the finishing course of No. 3 rock, and the road would not, therefore, be as good as it would be if the No. 3

rock was put on promptly. The commissioners testified that on June 10th they went to Wiegel's plant, and found the crushed rock bins empty, and the plant idle, and unloaded cars standing on the sidetrack, and that thereafter they frequently wrote Wiegel and 'phoned him and made several trips to see him urging him to ship No. 3 rock, during all of which time Wiegel insisted that he was shipping all the No. 3 rock his plant produced, and that this condition continued until July 16th, when the course of No. 1 rock was 13,400 feet ahead of the course of No. 3 rock. Wiegel admits that at this time No. 1 rock was worth $1 per yard and No. 3 rock $1.35 per yard.

The contract called for payments by the district on or about the first and fifteenth of each month, and payments in full for all rock shipped prior to June 1st were made, but no payment was made subsequent to that date. Wiegel now insists that the failure to make the payments on June 15th and July 1st constituted a breach of the contract on the part of the district, and excused him from further performance. We do not think so. Wiegel was already in default, and, in our opinion, a letter written by his attorney on July 9th explains Wiegel's failure to continue shipments. This letter reads as follows: "You are laboring under a misapprehension as to the amount of No. 3 rock you are entitled to receive. The contract called for 1, 2, 3 and 4, and this is the character or numbers of the stone produced by the crusher. The 1s form about 50 per cent. of the output, 2s 25 per cent., 3s 15 per cent., and 4s 10 per cent. The contract price is such a low figure that it cannot be presumed for a moment that any one of these grades was intended to form the whole, or a large part, of the contract, leaving the remainder of the output unused by you. Under the contract you are to use the four different grades, and there is no reason to believe that they were to be furnished in different proportions than that of the output. This I think is the chief fault that you seem to find with what you have received."

It is apparent from this letter that Wiegel construed the contract as requiring the district to take the entire output of the plant, mill run, and that he was not willing to continue shipments unless the district did so. The answer to this letter, as well as the entire correspondence, makes it plain that the district was willing and able to pay for the rock, if it could be furnished in the proportions ordered, and we, therefore, think the testimony warranted the court in finding that Wiegel was the party who first made default.

It appears that Wiegel was given credit for the rock shipped after June 1st at the contract price, and was charged with the excess over the contract price on the rock which the district had to buy elsewhere. This the contract expressly authorized, and the judgment to that effect is therefore affirmed.